**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200179-U

Order filed April 3, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal Nos. 3-20-0179 and 3-20-0180 |
| v. | ) ) ) | Circuit Nos. 12-CF-864 and 12-CF-1123 |
| ANTWON L. GLOVER, | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Albrecht and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The court did not err in summarily dismissing defendant's postconviction petitions, as the petitions failed to make arguable claims of ineffective assistance of counsel.

¶ 2    Defendant, Antwon L. Glover, appeals from the summary dismissal of his two postconviction petitions. Defendant argues the Peoria County circuit court erred in dismissing his petitions because they set forth arguable claims of ineffective assistance of trial counsel. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          In case No. 12-CF-864, the State charged defendant, by indictment, with predatory criminal sexual assault of a child (count I) (720 ILCS 5/11-1.40(a)(1) (West 2010)) and aggravated criminal sexual abuse (count II) (*id.* § 11-1.60(c)(1)(i)). Count I alleged that between December 1, 2011, and May 26, 2012, defendant, a person 17 years of age or older, knowingly committed an act of sexual penetration with his stepdaughter[1] who was under 13 years of age. Count II alleged that between December 1, 2011, and May 26, 2012, defendant, a person 17 years of age or older, knowingly performed an act of sexual conduct with his stepdaughter who was under 13 years of age for the purpose of sexual arousal or gratification. The arrest card for case No. 12-CF-864 stated defendant was taken into custody on August 7, 2012.

¶ 5          In case No. 12-CF-1123, the State charged defendant, by indictment, with two counts of aggravated domestic battery (counts I and II) (720 ILCS 5/12-3.3(a), (a-5) (West 2012)) and two counts of aggravated battery (counts III and IV) (*id.* § 12-3.05(b)(2)). Count I alleged that defendant knowingly strangled family or household member C.W. Count II alleged that defendant knowingly strangled family or household member J.W. Count III alleged that defendant knowingly and without legal justification caused bodily harm to C.W., a child under 13 years of age, by striking and choking her. Count IV alleged that defendant knowingly and without legal justification caused bodily harm to J.W., a child under 13 years of age, by striking and choking her. The charges alleged that the offenses all occurred on May 26, 2012. The court appointed counsel to represent defendant in both cases.

---

[1]The victim's name is redacted from the charging instruments, but the record later establishes that the victim was J.W.

¶ 6                            A. Case No. 12-CF-1123

¶ 7        The State elected to proceed on case No. 12-CF-1123 first. During a pretrial hearing, defendant said, "my cell phone is the only witness I have for my innocence." Defendant also told the court "[t]hey won't even let my wife even come in and help me."

¶ 8        The State filed a notice of intent to use hearsay statements pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2012)). The State sought to use statements from emergency medical technicians (EMT) Brett Ramp and Jessie Torrez, as well as Detective Felicia Bonds.

¶ 9        At the section 115-10 hearing, Ramp testified that on May 26, 2012, he was dispatched to the home of seven-year-old C.W. and five-year-old J.W. Both children were taken outside of the house and into the ambulance for an examination. Ramp observed a scratch on the right side of J.W.'s neck and discoloration of her cheeks. J.W. told Ramp that her "dad choked" her.

¶ 10       Torrez testified that he noticed C.W. had bruises on her face. C.W. did not tell Torrez or the firefighters at the scene how she incurred the bruises. Torrez recalled that the adults on the scene provided the EMTs with several accounts of how C.W.'s injuries occurred. Torrez observed superficial lacerations to J.W.'s neck and shoulder. J.W. said her father had choked her. Torrez identified defendant as the individual J.W. referred to as her father. Defendant told Torrez "there's nothing wrong and there was no reason for [the EMTs] to take [the children]."

¶ 11       Bonds testified that she spoke with C.W. and J.W. at the hospital. J.W. told Bonds defendant had hit and choked her and he had done the same to C.W. C.W. initially told Bonds that she had fallen and later said, "My daddy hit and choked me." C.W. said her father had also hit J.W. The court took the matter under advisement.

¶ 12     At the next hearing, defense counsel notified the court that defendant told counsel that he had favorable witnesses and evidence on his cell phone. Defendant explained that he had given his cell phone to a friend when the police stopped him "because it had too much evidence on it." However, defendant had been unsuccessful in retrieving it. Defendant also explained that his wife, Brittinie Stanley, was unable to help him because "they using my kids against her." The court denied defendant's request to be released to secure the additional evidence, defendant waived his right to a jury trial, and the court continued the case for a bench trial.

¶ 13     At trial, Peoria Police Officer Brian Skaggs testified that he was dispatched to 516 Vine Street at 8:30 p.m. on May 26, 2012. Skaggs observed C.W. in an ambulance with broken blood vessels in her eyes. The firefighters told Skaggs that, contrary to her mother Stanley's claim, C.W.'s injuries were not caused by falling off the couch. While speaking with the firefighters, an EMT or firefighter brought J.W. out of the house.

¶ 14     Peoria Police Sergeant Brad Dixon testified that Skaggs had briefed him on the situation at 516 Vine Street. Skaggs indicated that there were two children that had been physically abused. The children's mother reported that they had fallen. Dixon took defendant into custody after finding him in the yard behind 518 Vine Street. On cross-examination, Dixon said that when he took defendant into custody, he found a cell phone in defendant's possession. Skaggs initially collected the cell phone as evidence but later returned it to defendant.

¶ 15     Giovanna Castro-Giovanna testified that she lived at 518 Vine Street. Defendant did not live at that address but Castro-Giovanna had seen defendant at 516 Vine Street. On May 26, 2012, the police spoke with Castro-Giovanna's fiancé, Isaac Bloom. While the police spoke with Bloom, defendant stood near the back door of 518 Vine Street.

¶ 16    J.W. testified that she was six years old. Before the ambulance transported J.W. to the hospital, defendant had choked her. At that time, defendant lived with J.W. On cross-examination, J.W. said C.W. was not present when defendant choked her. C.W. was downstairs and had fallen off the couch. J.W. recalled that C.W.'s "eyes [were] all bloody; and she had all of the dots." J.W. said Stanley was not present when defendant choked her. J.W. said defendant had choked her twice—once on the day the ambulance took her to the hospital and once on a prior occasion.

¶ 17    C.W. testified that she was seven years old. Before the ambulance took her to the hospital, C.W. fell off the couch "[w]hen [defendant] did [her] stuff." C.W. explained that defendant pulled down her pants and hurt her "privates." Defendant also choked C.W. C.W. said J.W. was in the room when defendant choked her. Defendant lived in the same house as C.W., and she called defendant "dad." On cross-examination, C.W. said that Stanley was present when defendant choked her.

¶ 18    Dr. Channing Petrak testified that she evaluated J.W. and C.W. Petrak opined that both children had injuries consistent with choking and strangulation.

¶ 19    The parties stipulated to the admission of the testimony from Ramp, Torrez, and Bonds from the section 115-10 hearing.

¶ 20    Defendant testified that on May 26, 2012, at approximately 8 a.m., he went to 516 Vine Street to visit Stanley and the children. Defendant explained that J.W. was his biological daughter and C.W. was his stepdaughter. Upon entering the house, defendant noticed that C.W.'s face was bruised as if she had been bitten by something or was suffering from a reaction to poison oak. Defendant immediately called C.W.'s grandmother and asked her to come to the house. Defendant also took photographs of C.W. and sent them to family members seeking their advice. At that time, J.W. was sleeping in another room. Defendant woke Stanley, who was sleeping upstairs.

Defendant showed Stanley C.W.'s face and then called his sister and mother who are doctors. Later in the day, one of defendant's friends, who had received the photographs, called the Department of Children and Family Services and the police.

¶ 21　　　　Defendant explained he did not call for an ambulance because he had a prior juvenile adjudication for committing sexual assault against his "little niece" when he was 15 years old. Defendant believed that calling an ambulance or the police would have resulted in the State taking custody of his children.

¶ 22　　　　Before the ambulance and police arrived, defendant's mother and sister told defendant that C.W.'s injuries were not caused by a fall and that someone had physically hit C.W. Nevertheless, C.W. continued to report that she had fallen off the couch. Defendant did not believe C.W.'s injuries were caused by a fall. Defendant denied striking or touching C.W.

¶ 23　　　　When the police arrived, defendant thought he was going to be arrested because he had not registered as a sex offender. Defendant approached the police and told an officer that he was J.W.'s father. Defendant stayed at the scene until the ambulance left. He then went to a store and to 518 Vine Street where he smoked cannabis with a neighbor. Defendant denied causing the children's injuries.

¶ 24　　　　On cross-examination, defendant said the cell phone he used to take photographs of the children's injuries was in his friend, "Big Youngee['s]" possession. Defendant did not know Big Youngee's name.

¶ 25　　　　Before the close of the defense's case, defendant asked to introduce additional evidence from his cell phone and to call additional witnesses to testify. Defendant also asked that the court release him on a personal recognizance bond so that he could locate his proposed witnesses and

6

obtain his cell phone. The court refused to release defendant. Defense counsel stated the defense had no further evidence.

¶ 26    The court found defendant guilty of all four counts. During the sentencing hearing, defendant again asserted that he had evidence on his cell phone that established that another individual had injured the children. The court sentenced defendant to two concurrent terms of 11 years' imprisonment. On direct appeal, we allowed counsel's motion to withdraw and affirmed the judgment. *People v. Glover*, No. 3-15-0570 (2016) (unpublished dispositional order).

¶ 27                        B. Case No. 12-CF-864

¶ 28    A little over one year after the trial in case No. 12-CF-1123, defense counsel requested a fitness hearing in case No. 12-CF-864. Counsel told the court that he had a *bona fide* doubt as to defendant's fitness to stand trial because defendant was fixated on his cell phone evidence. Counsel indicated that he did not recognize the significance of this evidence. The court ordered a fitness evaluation and defendant was subsequently found fit to stand trial.

¶ 29    Approximately four months later, defense counsel told the court that defendant wanted to represent himself. Defendant said that he wanted to take the case to trial and that he had cell phone records and other evidence. The court told defendant to make a list of his needs and it would review the list.

¶ 30    At the next hearing, defendant presented his list to the court. The list included a request for cell phone records generated in 2012 and to subpoena Stanley to testify. When the court asked defendant about the cell phone records, defendant only said they would help his case. The court found the records to be irrelevant and defendant had not articulated how they would support his defense. As to Stanley, defense counsel said that she had been identified as a potential witness at the first trial by the State and it was a strategic decision on whether to call one of the State's

7

proposed witnesses to testify for the defense. Counsel was disinclined to call a State's witness, but would request a subpoena for Stanley, if needed. Defendant did not proceed as a self-represented litigant.

¶ 31 Before trial, the State filed a motion *in limine* to prohibit testimony regarding J.W.'s prior sexual abuse by other individuals. See 725 ILCS 5/115-7 (West 2012). The parties subsequently agreed to exclude evidence of other claims of sexual conduct involving J.W.

¶ 32 The case proceeded to a stipulated bench trial on count I and the State dismissed count II. The parties stipulated that if the case proceeded to trial, J.W. would testify that she was born in 2006. Between December 1, 2011, and May 26, 2012, defendant committed numerous acts of sexual penetration with J.W. At the time, defendant was over the age of 17. J.W. would also testify that defendant lived with her, C.W., and Stanley, and the sexual acts occurred in their Peoria home. Jenny Labanowski, would testify that she was a counselor at Children's Home in 2012. While Labanowski was driving J.W. and C.W. home, J.W. indicated that defendant had committed sexual acts with her.

¶ 33 Based on the stipulated testimony, the court found defendant guilty of predatory criminal sexual assault of a child and sentenced him to 16 years' imprisonment. The court ordered the sentence to run concurrently with that imposed in case No. 12-CF-1123.

¶ 34 Defendant filed a motion for judgment notwithstanding the verdict or for a new trial, arguing his decision to enter into a stipulated bench trial was neither knowing nor voluntary. The court denied the motion. On direct appeal, we held that although defendant's stipulated bench trial was tantamount to a guilty plea, remand was not required for compliance with Illinois Supreme Court Rules 605(c) and 604(d) (Ill. S. Ct. R. 605(c) (eff. Oct. 1, 2001); R. 604(d) (eff. July 1, 2017)). *People v. Glover*, 2018 IL App (3d) 150678-U.

C. Postconviction Petition

¶ 36          After defendant's direct appeals concluded, defendant filed, as a self-represented litigant,

separate postconviction petitions in case Nos. 12-CF-864 and 12-CF-1123. Both petitions were

substantively identical. The petitions alleged that defendant received ineffective assistance because

trial counsel: (1) refused to impeach witnesses and police officers during pretrial motions;

(2) failed to provide an adequate defense; and (3) conducted no adversarial testing. Defendant filed

second postconviction petitions in each case in which he repeated his ineffective assistance of trial

counsel claims and added claims that trial counsel did not conduct a reasonable investigation. The

second petitions also alleged that appellate counsel was ineffective. The petitions contended that

defendant was prejudiced by the attorneys' deficient performance because "[a] re[a]sonable

probability that, but for counsel's unprofessional errors, the proceedings results would have been

different. [Citation.] That was shown clearly. Both counsels errors and conduct was at fault. They

were both ineffective and didn't conduct reasonable investigations or make a reasonable decision

that makes particular investigations unnecessary." In support, defendant attached an affidavit

signed by Stanley stating:

> "We all know you ain't do nothing to the kids I don't understand how you
>
> could of mess with them I don't believe it at all I just don't understand that [J.W.]
>
> is saying what she say [C.W.] & [J.W.] told them you touch der privet part and they
>
> also told them I knew about it I don't know nothing about that I just hope you don't
>
> get life in prison for something you didn't do my husband didn't do nothing to my
>
> kids he was not there the person who did it name is Janik he touched them when
>
> they where in foster care so the stuff my kids are saying about my husband is a lie
>
> someone coached them to say that in court on the stan I know my husband did

nothing to my kids because I was at home and I can witness to that and I can witness that my kids where coached as well to what they said in court on the stan about my husband for one my kids didn't stay with us they stade with my mom on 611 N Sloan I and my husband stade on 516 N Vine in Peoria the story my kids said on the stan was someone else not my kids so who told them to say that about my husband I don't know but I know my husband didn't touch my kids and that someone told them to say what they said about my husband and Damion touch them as well."

¶ 37      The court entered a written order summarily dismissing defendant's petitions. The order found: (1) there were insufficient or missing affidavits or attachments; (2) defendant's claims were rebutted by the record; (3) defendant's claims that trial counsel refused to impeach witnesses, did not conduct adversarial testing, and did not conduct a reasonable investigation were bald conclusions with no support; (4) defendant's innocence claim was unsupported; and (5) Stanley's affidavit was conclusory, dependent upon hearsay, and excluded by a motion *in limine* ruling in case No. 12-CF-864. Defendant appealed the ruling in both cases, and we consolidated the cases for decision.

¶ 38      <center>II. ANALYSIS</center>

¶ 39      Defendant argues the court erred in summarily dismissing his postconviction petitions because the petitions set forth arguable claims that trial counsel was ineffective for failing to investigate his defense by interviewing and calling Stanley as a witness and obtaining cell phone evidence that would have corroborated defendant's testimony. Defendant also argues the petitions set forth arguable claims that appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel issue in defendant's direct appeals.

<center>10</center>

¶ 40  The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a remedy for a criminal defendant whose federal or state constitutional rights were substantially violated. The Act sets forth a three-stage proceeding. *Id.* At the first stage, the court must independently review the petition, taking the allegations as true, and determine whether " 'the petition is frivolous or is patently without merit.' " *People v. Hodges*, 234 Ill. 2d 1, 10 (2009) (quoting 725 ILCS 5/122-2.1(a)(2) (West 2006)). "A petition may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *People v. Tate*, 2012 IL 112214, ¶ 9. A petition lacks an arguable basis in law or fact when it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Hodges*, 234 Ill. 2d at 16. A "fanciful factual allegation" is "fantastic or delusional" and an indisputably meritless legal theory is one that is "completely contradicted by the record." *Id.* at 16-17. Generally, a *pro se* petition "must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent." *People v. Delton*, 227 Ill. 2d 247, 255 (2008). "All well-pleaded facts must be taken as true unless 'positively rebutted' by the trial record." *People v. Brown*, 236 Ill. 2d 175, 189 (2010) (quoting *People v. Coleman*, 183 Ill. 2d 366, 385 (1998)). Issues that could have been raised on direct appeal, but were not, are forfeited. *People v. English*, 2013 IL 112890, ¶ 22.

¶ 41  At the first stage of postconviction proceedings, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. In determining whether counsel's performance was unreasonable, there is a "strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence." *Coleman*, 183 Ill. 2d at 397. However, we do not consider

11

arguments related to trial strategy when reviewing a first-stage postconviction petition. *Tate*, 2012 IL 112214, ¶ 22. Prejudice means a "reasonable probability" that the result of the proceeding would have been different, if not for counsel's error. *People v. Carlisle*, 2019 IL App (1st) 162259, ¶ 79. At the first stage, speculative claims of prejudice are insufficient to support a claim of ineffective assistance. *People v. Viramontes*, 2017 IL App (1st) 160984, ¶ 53. Where a claim may be disposed of due to lack of prejudice, we need not address whether counsel's performance was unreasonable. *People v. Wilson*, 2014 IL App (1st) 113570, ¶ 46. We review the summary dismissal of a postconviction petition *de novo*. *Brown*, 236 Ill. 2d at 184.

¶ 42    Initially, we note that defendant could have raised his ineffective assistance of trial counsel claims on direct appeal. However, these claims are not subject to forfeiture because the petitions also allege that defendant received ineffective assistance of appellate counsel for failing to raise these claims in defendant's direct appeal. See *English*, 2013 IL 112890, ¶ 22 (forfeiture doctrine is relaxed where the forfeiture stems from the ineffective assistance of appellate counsel).

¶ 43    While the petitions filed in case Nos. 12-CF-864 and 12-CF-1123 are identical, they arise out of two distinct proceedings. Accordingly, we must review each petition in the context of the case in which they were filed. We begin by reviewing the petition filed in case No. 12-CF-1123.

¶ 44    In relevant part, defendant's petition and supporting affidavit claim that trial counsel was ineffective for failing to interview and call Stanley to testify and to investigate defendant's cell phone evidence. This ineffective assistance of trial counsel claim fails because the petition did not make an arguable assertion of prejudice. With regard to prejudice, the petition merely asserted "but for counsel's unprofessional errors, the proceedings results would have been different." The petition provides no details on how calling Stanley to testify and introducing the cell phone records would have altered the outcome of defendant's trial. At best, Stanley's affidavit generically asserts

12

that defendant did not touch the children. Notably, it does not indicate that another household member or individual had battered the children. Defendant's references to the cell phone records also appear to be a continuation of his often repeated, bare assertion that these records would support his defense. Defendant does not otherwise explain how these records would support his defense and change the outcome of the trial.

¶ 45    In contrast to the bald assertions in the petition, the evidence of defendant's guilt of the two aggravated domestic battery and two aggravated battery charges is significant. J.W. and C.W. consistently testified that defendant had hit and choked them. The children's testimony was corroborated by additional witnesses who reported the children had told them about the choking incident before the trial. C.W. also testified that defendant lived with her and J.W., and that she called defendant "dad." Dr. Petrak testified that the children's injuries were caused by choking or strangulation. Even defendant testified that the alternative theory, that C.W. fell off the couch, was inconsistent with her injuries.

¶ 46    Turning to the petition filed in case No. 12-CF-864, we also find that this petition did not make a showing that defendant was arguably prejudiced by trial counsel's failure to interview and call Stanley to testify and investigate defendant's cell phone evidence. This is especially true in this case because defendant proceeded by way of a stipulated bench trial that was tantamount to a guilty plea. See *Glover*, 2018 IL App (3d) 150678-U, ¶ 12 (" 'A stipulated bench trial is tantamount to a guilty plea if (1) the State presents its entire case by way of stipulation and the defendant fails to preserve a defense, or (2) the defendant concedes, by way of stipulation, that the evidence is sufficient to support a guilty verdict.' " (quoting *People v. Weaver*, 2013 IL App (3d) 130054, ¶ 19)). Despite this procedural posture, defendant does not argue in his petition nor does Stanley aver in her affidavit, that defendant would not have agreed to proceed by way of a

13

stipulated bench trial if counsel had investigated the additional evidence. *Cf. People v. Rissley*, 206 Ill. 2d 403, 457 (2003) (to establish prejudice in a guilty plea case, a defendant must show a reasonable probability that but for counsel's error, he would not have pled guilty and would have insisted on going to trial). Instead, the petition makes a generic assertion of prejudice, and in the supporting affidavit, Stanley makes several assertions that defendant did not commit the charged offenses and two other individuals committed sex offenses to the children. Additionally, neither the petition nor Stanley's affidavit indicates how the cell phone records would impact defendant's decision to proceed by way of a stipulated bench trial. To the contrary, defendant's trial testimony indicated that the cell phone evidence solely rebutted the charges in case No. 12-CF-1123 by corroborating his testimony that someone or something else had caused C.W.'s injuries. Thus, the record indicates that these records were only relevant to the charges in case No. 12-CF-1123.

¶ 47 The claims of prejudice in both petitions are speculative and insufficient to satisfy the first-stage pleading standards. Moreover, as defendant cannot establish the prejudice component of ineffective assistance of trial counsel, he also cannot establish that appellate counsel was ineffective for failing to raise this meritless claim. See *People v. Edwards*, 195 Ill. 2d 142, 163-64 (2001) (appellate counsel is not required to raise issues that he reasonably determines are meritless). Therefore, the court did not err in summarily dismissing defendant's postconviction petitions.

¶ 48                                   III. CONCLUSION

¶ 49 The judgment of the circuit court of Peoria County is affirmed.

¶ 50 Affirmed.

14